UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ASHISH S. PANDYA,

Plaintiff,

-against-

SECURITIES AND EXCHANGE COMMISSION,

Defendant.

Case No. 1:23-cv-11180 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

*Pro se* Plaintiff Ashish S. Pandya ("Plaintiff" or "Pandya") brings this action pursuant to 18 U.S.C. § 242 against the Securities and Exchange Commission ("Defendant" or the "SEC"), alleging that the SEC violated his due process rights. *See generally* Dkt. 1 ("Compl."); Dkt. 4 ("Am. Compl."). On May 24, 2024, the SEC moved to dismiss the Amended Complaint for insufficient service of process under Federal Rule of Civil Procedure ("Rule") 12(b)(5), for lack of subject matter jurisdiction under Rule 12(b)(1), and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See* Dkt. 17 ("Br.") at 1. Pandya opposed the motion. *See* Dkt. 23 ("Opp."). On December 9, 2024, Pandya filed an additional opposition and moved for summary judgment. *See* Dkt. 25 ("Opp. and MSJ."). For the reasons set forth below, the Court GRANTS the SEC's motion and dismisses the Amended Complaint without leave to amend, and DENIES as moot Pandya's motion for summary judgment.

## BACKGROUND

### I. Factual Allegations[1]

Plaintiff Ashish S. Pandya, proceeding *pro se*, is a citizen of Washington State, Compl. at 2, who moved to the United States in 2006 from the United Kingdom, Opp. at 3.[2] In 2007, Pandya formed a limited liability company, Miash Holdings LLC, in pursuit of a "creative project." Am. Compl. at 3. In 2009, Pandya created another company, Miash Capital Management, to trade Forex commodities out of New York, but he never registered the company with any state or government agency. *Id.* at 3. Pandya closed Miash Capital Management in or around 2011, *id.*, after a colleague "reported [him]" to the Commodity Futures Trading Commission, Opp. at 3. In 2013, Pandya began working in the mortgage industry. Opp. and MSJ at 8.

---

[1] For purposes of resolving the motion to dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all reasonable inferences in Pandya's favor. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024). Given Pandya's *pro se* status, the Court construes the Amended Complaint broadly. *See, e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006))).

[2] On a motion to dismiss, "consideration is limited to the factual allegations in [the] . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs have knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Courts have discretion, however, to show *pro se* plaintiffs more leniency. While "material outside a complaint generally is not to be taken into consideration on a motion to dismiss, the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where, as here, those allegations are consistent with the complaint." *Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998). The Court therefore considers Pandya's allegations in his opposition submissions insofar as they are not inconsistent with the allegations pleaded in his Amended Complaint.

At some point in 2018, Pandya discovered that a family trust was fraudulently created in Australia without his knowledge using his identity documents. Am. Compl. at 3. According to Pandya, "well known figure[s] in government and entertainment us[ed] fake" power of attorney ("POA") documents "with fabricated signatures," *id.*, to "launder[] money and [d]ebt" through the trust, Opp. at 5; *see also* Opp. and MSJ. at 3 ("27 trillion dollars was put in the . . . trust . . . and then my ID was attached to the trust.").

In March 2019, an attorney and "so called business acquaintance who turned out to be a SEC field agent" approached Pandya and "persuaded" him to buy a cryptocurrency called XRP. Am. Compl. at 4. Subsequently, Pandya learned that a life insurance policy was "taken out . . . on [him] and [his] children without [his] consent or permission." *Id.* On June 11, 2019, "the SEC field agent[] offered to send [him] a Miash Holdings LLC operating agreement to match the creation of the trust," which he never signed. *Id.* On June 13, 2019, SEC Chairman Robert Jackson "conducted a[n] interview on crypto regulation that implicated that he had read the document." *Id.*

In January 2020, during the COVID-19 pandemic, Pandya began working from home, where the government purportedly targeted him and his family with energy weapons and cyberattacks. *Id.*; Opp. at 5-6. Pandya alleges that "[g]overnment leaders and officials had direct access to [his] personal cell phone and internet," Am. Compl. at 4, which they hacked to take out "[l]oans, credit cards, [and] securities" in his name to accuse him of "unregistered financial securities fraud," Opp. at 2; *see also* Am. Compl. at 10 ("[M]y phone and Coinbase account were copied multiple times and crypto was added without my knowledge."). Due to "all the pain and suffering and trauma" that the government allegedly caused, Pandya began to attend therapy, for which the government "retaliated against" him. Am. Compl. at 4. Defendant further alleges that in December 2020, the SEC brought an enforcement action

against Miash Holdings, and that in February 2021, the "SEC conducted . . . an unconventional procedure" and violated HIPAA "in pursuit of . . . regulation by enforcement in the crypto space." Opp. at 2; *see also id*. at 8 (alleging that the SEC "tr[ied] to get [him] incarcerated and . . . violated [HIPAA] to push a narrative").

In July 2022, Pandya applied for a home equity line of credit ("HELOC"), and in November 2022, Pandya received a document that "stated [his family's] death[s] and would [have] put [them] in to bankruptcy." Am. Compl. at 4. In November 2023, Pandya applied for another HELOC, after which he received another document indicating that the government "tried to put [him] in to bankruptcy again and stated [their] deaths." *Id.* This document "added [a] POA" with "a fraudulent copied signature," *id.*, in order to "access" the assets from his trust, Opp. at 7. Pandya alleges that "the SEC and its officers" tried "to force bankruptcy on [him] and his family" a total of three times. Am. Compl. at 6.

## II. Procedural History

On December 21, 2023, Pandya filed his Complaint. *See generally* Compl. On January 12, 2024, the Court dismissed the Complaint *sua sponte* to the extent that it asserted claims on behalf of other entities, Dkt. 3 ("Order of Dismissal") at 3, sought the criminal prosecution of others, *id.* at 4, and brought claims against the SEC that were barred under the doctrine of sovereign immunity, *id.* at 4-6. The Court granted Pandya leave to amend the Complaint to correct these deficiencies. *Id.* at 7.

On February 12, 2024, Pandya filed the Amended Complaint. *See generally* Am. Compl. On March 5, 2024, Pandya filed a motion for default judgment, Dkt. 5, and on March 12, 2024, he filed a motion to transfer the case and recuse the undersigned, Dkt. 6, both of which the Court denied on March 15, 2024, Dkt. 7. On March 28, 2024, Pandya filed proof of

service of the summons on the SEC. Dkt. 10. On April 30, 2024, Pandya moved again for default judgment, Dkt. 11; *see* Dkts. 12-14, which the Court denied on May 1, 2024, Dkt. 15.

On May 24, 2024, the SEC filed a notice of appearance, Dkt. 16, and moved to dismiss the Amended Complaint, *see generally* Br. On September 16, 2024, Pandya filed his opposition to the SEC's motion to dismiss, *see generally* Opp., and on September 27, 2024, the SEC filed a reply in further support of its motion, Dkt. 24. On November 25, 2024, Pandya filed an additional opposition to the SEC's motion to dismiss, accompanied by a motion for summary judgment, *see generally* Opp. and MSJ, to which the SEC filed a response in opposition on December 9, 2024, Dkt. 26. On December 19, 2024, Pandya filed a motion to request pro bono counsel and to compel discovery, Dkt. 27, which the Court denied on December 26, 2024, Dkt. 28.

## DISCUSSION

### I. The SEC's Motion to Dismiss

The SEC seeks dismissal of the Amended Complaint for insufficient service of process under Rule 12(b)(5), for lack of subject matter jurisdiction due to sovereign immunity under Rule 12(b)(1), and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See generally* Br. The Court addresses each ground for dismissal in turn below and grants the SEC's motion to dismiss on all three bases. Accordingly, the Court also denies as moot Pandya's motion for summary judgment. *See, e.g.*, *In re IBM Arb. Agreement Litig.*, No. 21-cv-06296 (JMF), 2022 WL 2752618, at *9 (S.D.N.Y. July 14, 2022) (denying motion for summary judgment on claim as moot after granting motion to dismiss the claim), *aff'd*, 76 F.4th 74 (2d Cir. 2023).

**A. Insufficient Service of Process**

The SEC first seeks to dismiss the Amended Complaint for insufficient service of process. Br. at 5; *see* Fed. R. Civ. P. 12(b)(5)). For the reasons set forth below, the Court finds that Pandya has not properly served the SEC and grants the SEC's motion to dismiss pursuant to Rule 12(b)(5).

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Buon v. Spindler*, 65 F.4th 64, 73 (2d Cir. 2023) (quoting *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006)). "Therefore, to survive a motion to dismiss based on lack of personal jurisdiction and insufficient service of process, the plaintiff must demonstrate that [he] adequately served the defendants." *Id.* (citing *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)); *see also Corley v. Vance*, 365 F. Supp. 3d 407, 431 (S.D.N.Y. 2019) ("In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F.Supp.2d 54, 64 (S.D.N.Y. 2010))), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020) (summary order). To adequately serve a United States agency pursuant to Rule 4, a party must:

> [1] deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought — or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk — or . . . send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office; [2] send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; . . . [3] and also send a copy of [each] by registered or certified mail to the agency.

Fed. R. Civ. P. 4(i)(1)-(2).

Pandya has not adhered to these requirements. Pandya's proof of service, filed on March 28, 2024, shows only that the summons and complaint were served on an

Administrative Officer at the SEC. Dkt. 10 at 1. Pandya's filing does not indicate that he served the Attorney General or the U.S. Attorney for the Southern District of New York, both of which are also required under Rule 4(i). On May 14, 2024, an attorney in the SEC's Office of General Counsel sent an email to Pandya to inform him that he had not properly served the agency. *See* Dkt. 17-2. On May 16, 2024, Pandya sent a reply to the SEC asserting that he had satisfied the requirements of Rule 4(i), Dkt 17-3, but he had not actually done so, and he has made no further attempts to properly effect service of process. Accordingly, Pandya has not adequately the served the SEC, and the Court grants the SEC's motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process.

**B. Sovereign Immunity**

The SEC also seeks to dismiss the Amended Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that Pandya's claims are barred by sovereign immunity. Br. at 6. In response, Pandya asserts that the SEC waived its sovereign immunity under 11 U.S.C. § 106(b), which abrogates sovereign immunity in certain bankruptcy-related circumstances, *see* Opp. at 10-12 (collecting cases), and that "sover[eig]n immunity should be waived due [to] the negligence SEC has shown," Am. Compl. at 6. The Court finds that even if service was proper on the SEC, Pandya has failed to show that SEC's sovereign immunity has been waived as to his claims and grants the SEC's motion to dismiss under Rule 12(b)(1).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "The United States and its agencies, including the SEC, are immune from suit unless 'Congress has expressly waived sovereign immunity.'" *Tanjutco v. NYLife Sec. LLC*, No. 23-cv-04889 (BCM), 2024 WL 4135686, at *9 (S.D.N.Y. Sept. 10, 2024) (quoting *Sprecher*

*v. Graber*, 716 F.2d 968, 973 (2d Cir. 1983)) (citing *Arjent LLC v. U.S. S.E.C.*, 7 F. Supp. 3d 378, 383 (S.D.N.Y. 2014); *Am. Benefits Grp., Inc. v. Nat'l Ass'n of Sec. Dealers*, No. 99-cv-04733 (JGK), 1999 WL 605246, at *4 (S.D.N.Y. Aug. 10, 1999)). Because "[t]he doctrine of sovereign immunity is jurisdictional in nature, . . . to prevail, the plaintiff bears the burden of establishing that [his] claims fall within an applicable waiver." *Markarova*, 201 F.3d at 113 (citations omitted) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990); *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987)).

Pandya has not satisfied this burden. Pandya relies on Section 106(b) of the Bankruptcy Code to argue that the SEC's sovereign immunity has been waived for his claims, Opp. at 10-12, but that statute is inapposite here. "[U]nder the plain meaning of Section 106(b), the Government waives sovereign immunity only with regard to prepetition proofs of claim" in certain bankruptcy cases, and this is not a bankruptcy case. *United States v. Bond*, 762 F.3d 255, 263 n. 7 (2d Cir. 2014) (quoting *United States v. Bond*, 486 B.R. 9, 32-33 (E.D.N.Y. 2012)); *see* Am. Compl. at 6 ("[T]his is a non-bankruptcy case . . . ."); *see also* 11 U.S.C. § 106(b) ("A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose."); 11 U.S.C. § 106(a)(5) ("Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under . . . nonbankruptcy law.");

Moreover, to the extent that the Amended Complaint asserts claims based on a waiver of sovereign immunity under the Federal Tort Claims Act ("FTCA"), Pandya has not demonstrated that he adhered to the statute's procedural requirements. *See* Order of Dismissal

at 5 ("The [FTCA] provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment," but "[a] plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claim." (first citing 28 U.S.C. §§ 1346(b)(1), 2680); and then citing *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds by United States v. Kwai Fun Wong*, 575 U.S. 402 (2015))). "[B]efore an FTCA suit can be filed in the district court, 'the claimant shall have first presented the claim to the appropriate Federal agency,'" *Flores v. United States*, 885 F.3d 119, 121 (2d Cir. 2018) (quoting 28 U.S.C. § 2675(a)), and the claim must be "brought to federal court 'within six months' after the agency acts on the claim," *Wong*, 575 U.S. at 405 (quoting 28 U.S.C. § 2401(b)); *see also Phillips v. Generations Fam. Health Ctr.*, 723 F.3d 144, 147 (2d Cir. 2013) ("Under the FTCA, before a claimant can file suit, he or she must first present the claim to the appropriate federal agency," and "[t]he claimant can only initiate his or her lawsuit once the claim has been denied by the agency . . . ." (first citing 28 U.S.C. § 2401(b); and then citing 28 U.S.C. § 2675(a))); 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.").

On September 5, 2023, Pandya submitted an administrative tort claim to the Department of Justice ("DOJ"). *See* Dkt. 17-4; Am. Compl. at 5. On December 7, 2023, the DOJ mailed a response to Pandya informing him that his claim was "invalid" because it "lack[ed] a sum certain" and did not "provide the name of the federal agency" that allegedly harmed him. Dkt. 17-4. Accordingly, Pandya's claim was not processed and was returned to him with instructions to submit a revised claim. *Id.* Because Pandya's claim, as presented to

the DOJ, did not "provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth," *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998) (citing *Keene Corp. v. United States*, 700 F.2d 836, 842 (1983)), he did not satisfy the FTCA's presentment requirement, *see Tamares v. United States*, No. 07-cv-0688 (PKL), 2009 WL 691002, at *3 (S.D.N.Y. Mar. 17, 2009) ("Courts in this District routinely find that a plaintiff's notice of claim does not satisfy the presentment requirement where, as here, the alleged injuries were insufficiently detailed, the damages were poorly documented, and the agency's requests for additional information went unfulfilled." (citations omitted)). Accordingly, the DOJ's response did not constitute a "final denial" that would have allowed Pandya to initiate this suit. 28 U.S.C. § 2401(b). Pandya has not alleged that he submitted a revised claim as instructed or that he presented any new claims to the DOJ or SEC that were ultimately acted upon by the agency. Pandya has thus not shown that he has complied with the requirements of the FTCA prior to initiating this suit, and he cannot invoke the FTCA's waiver of sovereign immunity.

In sum, Pandya has not identified an applicable waiver of sovereign immunity for his claims against the SEC. The Amended Complaint must therefore be dismissed because the Court lacks subject matter jurisdiction to adjudicate Pandya's claims.

### C. Failure to State a Claim for Relief

Even if Pandya's claims were not barred by sovereign immunity and the SEC were properly served, the Amended Complaint fails to state a claim for which relief can be granted under Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion, the court must "accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alterations adopted) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). The court shall not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Courts in this Circuit "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)); *accord Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). However, "*pro se* status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure." *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007); *see also Triestman*, 470 F.3d at 477 ("[*P*]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))).

Because Pandya does not "seek[] relief other than money damages," the Court construes the Amended Complaint as bringing claims under only the FTCA and not under the Administrative Procedure Act ("APA"). *Rodriguez v. Carson*, 401 F. Supp. 3d 465, 467 (S.D.N.Y. 2019) ("[T]he [APA] . . . waives the United States' sovereign immunity only as to actions against federal agencies and officers 'seeking relief other than money damages.'" (quoting 5 U.S.C. § 702)); *see* Am. Compl. at 6 (requesting "60 million" for "pain and suffering and reputational damage along with emotional distress"). If a plaintiff's "FTCA claims fail to state a claim upon which relief can be granted under Rule 12(b)(6), the Court lacks subject matter jurisdiction over the claims and will dismiss them pursuant [to] Rule 12(b)(1)." *Salamone v. United States*, 618 F. Supp. 3d 146, 151 (S.D.N.Y. 2022). To state a

claim for relief under the FTCA "for money damages, . . . injury or loss of property, or personal injury," a plaintiff's allegations must show that his harms were "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

Pandya's Amended Complaint does not contain sufficient factual content to state a claim for relief under the FTCA. As a threshold matter, the Court cannot determine which state's body of tort law to apply because Pandya has not identified where the SEC's alleged acts or omissions occurred. *See* Am. Compl.; *see also* Order of Dismissal at 2 (observing that the original Complaint "d[id] not specify where those alleged events occurred"). Even if the applicable jurisdiction were ascertainable, Pandya's threadbare and conclusory allegations are insufficient to show that his purported harms were caused by the SEC. For instance, Pandya asserts that the government forged his signature to launder money through a fraudulently created trust in Australia, *see* Am. Compl. at 3; Opp. at 5, but he provides no more specific factual detail to connect the creation of the trust to the SEC, and none of his supporting exhibits mention or implicate the SEC, *see* Am. Compl. at 10-11; *see also In re Inclusive Access Course Materials Antitrust Litig.*, 544 F. Supp. 3d 420, 433 (S.D.N.Y. 2021) ("[T]he Supreme Court's decisions in *Iqbal* and *Twombly* require 'factual amplification where needed to render a claim plausible . . . .'" (omission in original) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010))). Moreover, Pandya has not pleaded sufficient factual allegations to demonstrate that the individuals with whom he purportedly corresponded regarding the trust were actual SEC employees. *See* Am. Compl. at 4, 10; *cf. Johnson v. United States*, No. 24-cv-00872 (DEH), 2024 WL 5083068, at *20 (S.D.N.Y. Dec. 11, 2024)

(dismissing complaint for failure to state a claim where plaintiffs "fail[ed] to identify any circumstances among the many factual allegations in the Complaint in which [federal] employees might plausibly have been acting outside of their employment").

Pandya also alleges, without factual support, that the SEC threatened his life and sought to force him into bankruptcy, and none of the financial documents that he attaches to his Amended Complaint support this inference or connect his allegations to the SEC. *See* Am. Compl. at 11-12 (including links to HELOC closing documents with boilerplate language regarding, among other things, the use of POAs and other contractual rights associated with the loan). Likewise, Pandya alleges that the government was hacking his devices and using energy weapons against his family, but the documentation he offers does not support these conclusory allegations. *See, e.g.*, *id.* at 10 (including link to cell-phone screenshot with no context or apparent connection to the government); Opp. at 6 (same). Although Pandya may believe that the SEC acted illegally or wrongfully, the Amended Complaint does not demonstrate that his "belief is based on factual information that makes the inference of culpability plausible." *Arista Recs.*, 604 F.3d at 120 (citing *Iqbal*, 556 U.S. at 678).

In sum, Pandya's "naked assertion[s] . . . without some further factual enhancement," prevent his claims from crossing "the line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557. Accordingly, he fails to state a claim for relief, and his claims must be dismissed.

## II. Leave to Amend

The SEC requests that the Court deny Pandya leave to amend his complaint. The Court grants this request. Rule 15(a) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); see *Farrell v. City of New York,* No. 23-cv-04329 (JLR), 2024 WL 3849333, at *7 (S.D.N.Y. Aug. 16, 2024). "Nonetheless, 'it is within

the sound discretion of the district court to grant or deny leave to amend,' and 'a district court may properly deny leave when amendment would be futile.'" *Veras v. N.Y.C. Dep't of Educ.*, No. 22-cv-00056 (JLR) (SN), 2024 WL 3446498, at *8 (S.D.N.Y. July 17, 2024) (first quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018); and then *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999)). The Court finds that amendment would be futile here because the SEC is immune from suit, which renders "the flaws in pleading . . . incurable." *Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) (quoting *Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009)) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Pandya was already provided an opportunity to amend his Complaint to address sovereign immunity, *see* Order of Dismissal at 5-7, but the Amended Complaint fails to cure the noted deficiencies. *Cf. Kling*, 532 F. Supp. 3d at 153 ("In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend."). Moreover, the Court "do[es] not find that the complaint 'liberally read' suggests that the plaintiff has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe." *Cuoco*, 222 F.3d at 112 (alterations adopted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). For these reasons, the Court denies leave to amend.

**CONCLUSION**

The SEC's motion to dismiss the amended complaint for insufficient service of process, lack of subject matter jurisdiction due to sovereign immunity, and failure to state a claim is GRANTED. Pandya's motion for summary judgment is DENIED as moot. The

Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 17, 23, and 25, and close the case.

Dated: January 10, 2025
New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge